# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THERESA LYNN CAMPBELL,<br><br>                Plaintiff,<br><br>    v.<br><br><br>THE CITY OF COEUR D'ALENE, an Idaho municipal corporation, COEUR D'ALENE POLICE DEPARTMENT, COEUR D'ALENE POLICE CHIEF WAYNE LONGO, OFFICER SPENCER MORTENSEN, OFFICER JUSTIN SHIFLETT, JOHN DOES 3-10, and JANE DOES 1-10<br><br>                Defendants. | Case No. 2:09-CV-403-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment (Dkt. 15), Motion to Strike Declaration of Plaintiff Theresa Lynn Campbell and attached Witness Statements (Dkt. 19), and Motion to Withdraw the Motion to Strike the Declaration of Plaintiff (Dkt. 21). The Court heard oral argument on the motions on October 6, 2010 and now issues the following decision.

## BACKGROUND

On the evening of January 3, 2009, Theresa Lynn Campbell suffered a panic attack

while a passenger in her friend Jesse Daly's truck. (Campbell Dep., p. 34; Decl., ¶ 4). At the onset of the attack, Daly drove Campbell to the Kootenai Medical Center (KMC) emergency room (ER). (Campbell Dep., p. 34). Campbell lost consciousness soon after the attack began. (Campbell Dep., p. 38). When she woke up, Campbell was being treated by ER medical staff members. (Campbell Dep., p. 38; Decl., ¶ 5).

When the ER staff wanted to conduct medical tests, Campbell refused because she had recently undergone tests related to a prior panic attack and could not afford more tests. (Campbell Dep., pp. 40-41). She left the ER with Daly after midnight. (Campbell Dep., pp. 41, 45).

About a mile away from the hospital, Campbell suffered another panic attack. (Campbell Dep., p. 45). She lost consciousness again and woke up in room 11 of the Kootenai Medical Center ER (Campbell Dep., pp. 45-46; Mortensen Aff., ¶ 10). This time, an ER nurse attempted to administer medical tests forcefully. (Campbell Dep., p. 47; Decl. ¶ 6). Campbell pushed the nurse's hands away, adamantly refused the tests, and informed the nurse that she wanted to leave. (Campbell Decl., ¶ 6). The nurse left the room. (Campbell Dep., p. 48; Decl. ¶ 6).

Soon after, Campbell noticed "a commotion" in the hallway. (Campbell Dep., p. 48). Campbell left the room in her hospital gown and saw Daly with police officers. (Campbell Decl. ¶ 7). Daly said he was being arrested for driving under the influence. (Campbell Dep., p. 49). Campbell approached Daly and the officers, asked why Daly was being arrested, and expressed her frustration about the situation. (Mortensen Aff.,

¶ 11, Campbell Dep., pp. 49-50). Officer Spencer Mortensen ("Mortensen") ordered Campbell back to her room and she returned to room 11. (Mortensen Aff., ¶ 12).

Mortensen testified in his affidavit that ER staff members escorted Campbell back to her room. (Mortensen Aff., ¶ 12). Mortensen heard Campbell scream for staff members to leave the room and witnessed several additional staff members enter the room. (Mortensen Aff., ¶ 13). As Mortensen approached, he was stopped by an staff member who told him that Campbell had hit him. (Mortensen Aff., ¶ 14). Mortensen also witnessed what he considered "combative" behavior from Campbell. (Mortensen Aff., ¶ 17). When Campbell tried to shut the door to the room, Mortensen testified that he was concerned that the room contained medical supplies that could be used as weapons, or that Campbell might barricade herself inside the room. (Mortensen Aff., ¶¶ 15, 18). Mortensen prevented Campbell from shutting the door by stepping into the doorway. (Mortensen Aff., ¶ 19).

Mortensen testified in his affidavit that Campbell slammed the door against his body, and screamed at him to leave the room. (Mortensen Aff., ¶ 20). She then formed fists with both hands and hit him in the chest. (Mortensen Aff., ¶ 21). At that point, Mortensen grabbed Campbell's left arm with his left hand and her right shoulder with his right hand, took her to the ground, and placed her wrists in handcuffs. (Mortensen Aff., ¶ 22). He placed her under arrest for battery on a police officer, I.C. § 18-915. (Mortensen Aff., ¶ 23).

Campbell conceded in her deposition that she first attempted to shut the door while

Mortensen was standing in the doorway. (Campbell Dep., p. 50). However, in her subsequent declaration, Campbell testified that she did not slam the door into Mortensen's body. (Campbell Decl., ¶ 8). Campbell then released the door to retrieve her belongings and Mortensen followed her into the room, standing between her and the door. (Campbell Dep., p. 55; Decl., ¶ 8). Campbell indicates that she tried to get past him and urged him to let her leave. (Id.) When he would not, she began to panic. (Id.) She started to hyperventilate. (Campbell Dep., p. 58; Decl., ¶ 8). As Campbell tried to "shove" or "push" by Mortensen, he grabbed her arm, told her "That's it. I've had enough of you," and placed her under arrest. (Campbell Dep., pp. 55,58-59; Decl., ¶ 10).

Campbell testified in her declaration that she attempted to walk past Mortensen, but that she did not strike Mortensen in any manner with her hands. (Campbell Decl., ¶ 9). She described in more detail how Mortensen grabbed her hand by the thumb, pulled it behind her back, and pushed her face into the hospital bed. (Campbell Decl., ¶ 10). Campbell then lost consciousness again. (Campbell Dep., p. 59, Decl., ¶ 10).

Campbell regained consciousness several times that morning; she testified that she woke up when her head "smacked" the side of the police car as she was "shoved" into the backseat and when she was "slammed" to the ground in the holding cell. (Campbell Dep., p. 59, 68; Decl., ¶¶ 11-13). In the cell, she awoke in severe pain, and with cuts and bruises on her arms. (Campbell Decl., ¶ 13). Campbell was booked later that day and released from jail on January 5, 2009. (Campbell Decl., ¶¶ 13-14).

After her release, Campbell wore a sling and bandages for weeks, and experienced

bruising and pain for months.  (Campbell Decl., ¶ 14).  She testified that she experienced serious psychological trauma from the incident, including a fear of law enforcement. (Campbell Decl., ¶ 17).

On February 6, 2009, Campbell pleaded guilty to a reduced charge of disturbing the peace (I.C. § 18-6409) in Kootenai County District Court.  (Williams Aff., Ex. A).

## ANALYSIS

### 1.  Legal Standard for Summary Judgment

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable

inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Liberty Lobby*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

## 2. Defendants' Motion for Summary Judgment

Defendants seek summary judgment on all claims in Campbell's Complaint. The Court will address each claim below.

### A. *Unlawful Arrest Without Probable Cause*

Campbell claims that Defendants violated her Fourth Amendment rights when Officer Mortensen performed a custodial arrest without probable cause. Defendants argue that probable cause existed for the arrest.

It is well established that the Fourth Amendment protects individuals from unlawful seizures, and requires that officers have probable cause to believe a crime has been committed before an individual is formally arrested. *See Dunaway v. New York*, 443 U.S. 200, 212-13 (1979). Probable cause exists "when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009).

Probable cause suffices for a custodial arrest so long as arresting officers had probable cause for any criminal offense, regardless of their stated reason for the arrest. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008) (citing *Devenpeck v. Alford*, 534 U.S. 146, 153-55 (2004)); *see also Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) ("probable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause"); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (". . . a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause

existed with respect to each individual charge, or indeed, any charge actually invoked by the arresting officer at time of arrest.").  In *Devenpeck v. Alford*, the Supreme Court established that the probable cause inquiry is not based upon the offense invoked by the arresting officer, but upon the facts known to the arresting officer at the time of the arrest. In other words, the probable cause inquiry is an objective, rather than a subjective, one. *See Devenpeck*, 534 U.S. 146, 153; *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006) (". . . if the facts known to the officer at the time are sufficient to create probable cause, the arrest is lawful, regardless of the officer's subjective reasons for the arrest").  However, probable cause must exist under a *specific* criminal statute. *Torres,* 548 F.3d at 1206 (emphasis added).

Campbell maintains that she did not strike, slap, or punch Mortensen, and at most, inadvertently touched him while trying to leave the hospital room.  (Campbell Decl., ¶ 9). However, the mere existence of a factual dispute is not enough to defeat summary judgment if there is no genuine issue of material fact.  *See Liberty Lobby*, 477 U.S. at 247-48.  While the Court takes Campbell's testimony as true, the dispute over whether she hit Mortensen is simply not material to the claim because sufficient probable cause for arrest existed independently of those facts.  *See Torres*, 548 F.3d at 1206.  That Mortensen invoked the crime of battery on a police officer at the time of arrest does not defeat a finding of probable cause, so long as the facts known to him constitute sufficient probable cause existed that she committed another crime.  *See Devenpeck*, 534 U.S. at 153.

In this case, Mortensen was told by a member of the KMC ER staff that Campbell hit him.[1]  (Mortensen Aff., ¶ 14).  Mortensen also heard Campbell screaming profanities at staff members, saw her physically struggle with staff members over closing the door, and witnessed her combative behavior.  (Mortensen Aff., ¶¶ 13, 15, 17).  Taken together, these facts constitute sufficient probable cause for the crime of battery, I.C. § 18-903, or disturbing the peace, I.C. § 18-6409 (the eventual offense to which Campbell pled guilty).

Campbell does not provide conflicting testimony about her interaction with ER staff members, her behavior that evening, or what the ER staff member told Mortensen.  In fact, her testimony describes a conflict with an ER staff member where she "pushed" his hands away from her, "choice words" being said to police officers, and her screaming at Mortensen.  (Campbell Dep., p. 51; Decl., ¶¶ 5-6, 8).  Nor does Campbell point to any evidence that Mortensen knew she was being treated for a panic attack or that he could have considered her behavior a result of the attack.  Campbell has not directed the Court's attention to any evidence on the record to dispute a finding of probable cause for battery or disturbing the peace.

Under these circumstances, the Court finds that a prudent person in the officer's position could reasonably believe that Campbell had committed a crime.  *See Lassiter*, 556 F.3d at 1053.  Therefore, sufficient probable cause existed for Campbell's arrest.

---

[1] "Victims" who report crime are "presumed to be reliable."  *United States v. Henderson*, 721 F.2d 662, 665 n. 1 (9th Cir. 1983); *United States v. Armstrong*, 654 F.2d 1328, 1335 (9th Cir. 1981).

Finally, Campbell's argument that officers must have probable cause of a suspect's specific intent to reasonably believe a specific intent crime has occurred does not apply to the crime of battery, a general intent crime.  *See State v. Carlson*, 3 P.3d 67, 78 (Id. 2000).

Because the facts support a finding of probable cause, Campbell fails to show that a genuine issue of material fact exists as to her claim for unlawful arrest.  *See Celotex*, 477 U.S. at 324.  Accordingly, the Court will grant Defendants' motion as to the unlawful arrest claim. [2]

**B.  *Excessive Force***

Campbell claims that Defendants violated her Fourth Amendment rights by using excessive force during her arrest.  Defendants argue that the force used to arrest Campbell was minimal and reasonable under the circumstances.

"All claims that law enforcement officers have used excessive force – deadly or otherwise – in the course of an arrest must be analyzed under the Fourth Amendment and

---

[2] Additionally, in *Heck v. Humphrey,* the Supreme Court barred § 1983 plaintiffs from recovering damages for unlawful actions that would invalidate their underlying conviction unless that conviction had been overturned on appeal or vacated in specific other ways. 512 U.S. 486, 487 (1994); *see Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (Per Curiam) (holding that, where Plaintiff pled guilty to charges arising from the same facts in an unlawful arrest claim, "There is no question that *Heck* bars [Plaintiff's] claims that defendants lacked probable cause to arrest him and brought unfounded criminal charges against him").   Campbell has provided no evidence as to any post-conviction proceeding to vacate her guilty plea.  Thus, this proposition also bars Campbell's claim for unlawful arrest.

its 'reasonableness' standard." *Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005)

(en banc). Such analysis requires balancing the nature and quality of the intrusion on the

alleged victim's liberty with the countervailing governmental interests at stake to

determine whether the use of force was reasonable. *Id*. at 701.

The inquiry requires "attention to the facts and circumstances of each particular

case, including (1) the severity of the crime at issue, (2) whether the suspect poses an

immediate threat to the safety of the officers or others, and (3) whether he is actively

resisting arrest or attempting to evade arrest by flight." *Brooks v. City of Seattle*, 599

F.3d 1018, 1025 (9th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

These factors must be considered in relation to the amount of force used. *Id*. Summary

judgment is appropriate if the Court concludes that "after resolving all factual disputes in

favor of the plaintiff, that the officer's use of force was *objectively* reasonable under the

circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (emphasis added).

(1) *Amount of Force Used*

First, the Court must "assess the quantum of force used to arrest [the suspect] by

considering 'the type and amount of force inflicted.'" *Deorle v. Rutherford*, 272 F.3d

1272, 1279 (9th Cir. 2001) (quoting *Headwaters Forest Def. v. County of Humbolt*, 240

F.3d 1185, 1198 (9th Cir. 2000)).

The right to use "some degree of physical coercion" to effect an arrest comes with

the right to make an arrest, but the force must be necessary to be reasonable. *Brooks*, 599

F.3d at 1025 (quoting *Graham,* 490 U.S. at 396).  Officers are not required to use the *least* intrusive means possible, but must act within the range of reasonable conduct, determined by considering the totality of the circumstances.  *Id.*  (citing *Forrester v. City of San Diego*, 25 F.2d 804, 806 n.2 (9th Cir. 1994)) (emphasis added).

Viewing the evidence in the light most favorable to Campbell, the record reflects that Mortensen used some force when placing Campbell in handcuffs.  Campbell testified that Mortensen grabbed her hand by the thumb, pulled her hand behind her back, and pushed her face-first into the bed.  At that point, Campbell lost consciousness and could not testify as to how the officer placed her in handcuffs.  Mortensen testified that he maneuvered Campbell to the ground after grabbing her arms, and then placed handcuffs on her wrists.  He used no weapon and grabbed only her arms in order to bring her to the ground and put handcuffs on her wrists.

Defendants argue that this specific use of force was minimal under the circumstances and the Court agrees.  Officers have the right to use physical force to make lawful arrests, *see Brooks*, 599 F.3d at 1025, and the act of handcuffing a person necessarily involves some physical force.  Considering the circumstances of placing Campbell under arrest and restraining her arms, Mortensen's use of force was reasonable.

However, Campbell recalled her head hitting the police car.  Campbell testified: "The next thing I remember was my head being slammed into the police car and being

forcefully shoved into the backseat of the vehicle." (Campbell Decl., ¶ 11). [3] Campbell also testified to the injuries she allegedly experienced as a result of her arrest, including a bump on her head, severe pain in her hand and arm, bruises all over her entire body. (Campbell Dep., pp. 60, 63-4). Defendants offer no evidence to refute or explain Campbell's version of post-arrest events.

Despite Campbell's lapse in consciousness, the facts give rise to a reasonable inference that Mortensen and Shifflet used a significant amount of force to hit Campbell's head on the side of the police car. *See Liu*, 849 F.2d at 1208. Therefore, the amount of force used weighs against the reasonableness of officers' actions after Campbell's arrest.

---

[3] Campbell also described this incident in her deposition:

> Q: And then do you remember hitting your head on the car?
>
> A: When they were – when whoever was – the police officer was throwing me into the car, I smacked my head really hard on the side of the like window or door when he was putting me – pushing me into the car.
>
> Q: Okay. Was anybody else around the patrol vehicle when this happened? Do you recall?
>
> A: I don't recall. I hit my head – I woke up hitting my head and then being thrown into the car and that was the last I remember at that point.

(Campbell Dep., pp. 59-60).

(2) *Graham Factors*

(a) **Severity of the Crime**

Defendants argue that the crime Campbell was suspected of committing was a serious one — battery on an officer. As discussed above, Campbell disputes whether she committed that crime. Nevertheless, a lack of probable cause does not establish the use of excessive force. *See Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004). Here, Mortensen had sufficient cause to believe that Campbell had committed *some* crime. This weighs in favor of a finding that Mortensen used reasonable force to restrain Campbell's hands. However, it does not help assess the officers' actions after Campbell was placed in handcuffs.

(b) **Immediacy of Threat**

Next, Defendants argue that Campbell appeared to pose a serious threat to the safety of the officer and bystanders. The threat posed by the suspect is the most significant *Graham* factor. *Brooks*, 599 F.3d at 1028. Mortensen testified that Campbell displayed combative behavior with medical staff, attempted to close the door against the wishes of medical staff, and had access to items in the room that could be used as weapons. While Campbell disputes striking Mortensen, she admits to having a conflict with Manning, as well as screaming at Mortensen while he was in the room with her. Under these circumstances, Campbell appeared to immediately threaten the safety of the officer and medical staff. This factor weighs in favor of finding that Mortensen used

reasonable to restrain Campbell.

However, it weighs against the use of force by officers after the threat ceased – when Campbell was handcuffed and unconscious.

### (c) **Resisting Arrest**

Finally, Defendants argue that Campbell resisted arrest or tried to evade arrest by using violent force to close the door. The record does not support Defendants' assertions. Campbell did not try to resist arrest or evade arrest; she attempted to leave the room long before the officer announced his intent to arrest her. And Campbell lost consciousness before she could try to actively resist being put in handcuffs. While she may have been non-compliant with the officer's verbal command for her to calm down, Campbell was not trying to resist arrest when Mortensen handcuffed her or when she was being transported into the car. This factor weighs against the officers' use of force.

### (3) *Totality of Circumstances*

Defendants argue that the officer's use of force was minimal, both under the circumstances and in consideration of the Coeur d'Alene Police Department policy on use of force. Other factors can be taken into account when assessing reasonableness, including whether a verbal warning was given, whether there were alternate means of subduing the suspect, or whether the officer complied with the police department policy on use of force. *See Brooks*, 599 F.3d at 1030.

Mortensen followed procedures by attempting to verbally address the problem

before using physical force.[4]  The officer resorted to a greater level of force only when it seemed necessary – namely, to effect a custodial arrest.  He then used his hands to physically restrain her.  Adherence to the police department's policy is an additional factor weighing towards reasonableness of the Mortensen's actions.

However, the officers' alleged use of force after Campbell was restrained does not comply with the police department policy.  Hitting Campbell's head on the side of the police car goes beyond the force necessary to control a suspect who is already handcuffed and who is unconscious.  There was an alternate way of transporting Campbell into the backseat of the car – placing her without hitting her head.

(4) *Reasonableness*

When considering the *Graham* factors in light of the actual force used by the officers, the force used to arrest Campbell was objectively reasonable under the circumstances of a possible threat to medical staff and Mortensen's compliance with police department policy.  However, questions remain with respect to the officers' conduct after Campbell was restrained.  The use of such force as to result in Campell having her head hit against the car, along with any other force that may have led to her

---

[4] The Coeur d'Alene Police Department's use of force policy states: "Control may be achieved through advice, warnings and persuasion, or by the use of physical force." The policy includes depiction of a "Force Continuum," which starts with "Officer Presence," then "Verbal," "Hands," "TASER and/or Defensive Aerosol Weapon," and continuing through "Lethal."  The accompanying instructions state that officers "should always begin and end with the minimum force necessary to control the subject." (Williams Aff., Ex. B).

injuries, considered against the fact that she was neither a safety threat nor resisting arrest, leaves open the question of whether the officers' force was objectively reasonable. Questions of material fact, such as whether officers actually slammed Campbell's head into the car, remain. Accordingly, summary judgement is denied as to Campbell's excessive force claim.

### C. *Qualified Immunity*

Defendants also contend that Mortensen and Officer Justin Shiflett (a named defendant whose participation in the arrest is not clear from the record) are entitled to qualified immunity on the constitutional claims against them.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, — U.S. —, —, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court established a two-pronged inquiry to resolve all qualified immunity claims:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second . . . the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Id*. The relevant, dispositive inquiry in determining whether a right is clearly established

is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005). This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case. *Id.*

In *Pearson v. Callahan*, the Supreme Court held that courts need not first determine whether the plaintiff demonstrated a constitutional violation, and may find officers entitled to qualified immunity if they find that the defendant officers' actions did not violate a clearly established right. 129 S. Ct. at 818. Thus, "if the officer's actions do not amount to a constitutional violation, the violation was not clearly established, or their actions reflected a reasonable mistake about what the law requires, they are entitled to qualified immunity." *Brooks*, 599 F.3d at 1022.

### (1) *Unlawful Arrest Claim*

As discussed above, sufficient probable cause existed for Campbell's arrest. Even if the Court had found probable cause lacking, it would not have been clear to a reasonable officer in this particular situation that an arrest was unlawful. *San Jose*, 402 F.3d at 97. Accordingly, Mortensen and Shifflet are entitled to qualified immunity on Campbell's unlawful arrest claim.

### (2) *Excessive Force Claim*

The Court has found that questions of fact exist as to whether the officers' actions constituted excessive force. Additionally, Defendants have a difficult time arguing that

the right to be free from excessive force is not clearly established, or that it would not be clear to a reasonable officer that slamming Campbell's head into the car while she was restrained was unlawful. Defendants can satisfy none of the requirements for qualified immunity for this claim. *See Brooks*, 599 F.3d at 1022. Thus, summary judgement remains inappropriate for Campbell's excessive force claim.

**D.  *Remaining Claims***

Defendants have also moved for summary judgment on Campbell's claims for due process violations, equal protection violations, cruel and unusual punishment, conspiracy to interfere with civil rights, failure to adequately train and supervise officers, and negligent hiring, retention and failure to discipline or take necessary corrective action claims. It is somewhat unclear from the Complaint whether Campbell meant to assert all of these claims. In fact, she wholly failed to respond to the motion for summary judgment as it relates to all of these claims. Accordingly, the Court will grant the motion as to these remaining claims and give only a brief description of the reasons for doing so.

(1) *Due Process Claim*

Campbell makes only a blanket accusation in her Complaint that Defendants violated her due process rights under the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment protects against government conduct which "shocks the conscience." *Crowe v. County of San Diego*, 608 F.3d 406, 431 (9th Cir. 2010). However, Campbell's claims are better seen as Fourth Amendment claims because the

Fourth Amendment specifically provides for deprivations of liberty arising out of an arrest. *See Fontana v. Harkin*, 262 F.3d 871, 881 (9th Cir. 2002); *Sanders v. City of San Diego*, 93 F.3d 1423, 1429 n.8 (9th Cir. 1996) (citations omitted). A constitutional claim covered by a specific constitutional provision must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *Fontana*, 262 F.3d at 882 (citations omitted). Since Campbell's claims arise from her arrest, they must be analyzed under the Fourth Amendment.

On the other hand, a *procedural* due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001). Where an individual faces a deprivation of life, liberty, or property, procedural due process entitles him to adequate notice, a hearing, and a neutral magistrate. *Goldberg v. Kelly*, 397 U.S. 254, 268-71 (1970).

Campbell has alleged the deprivation of a liberty interest in being free from incarceration. However, Campbell does not allege or provide any evidence about a lack of procedural protections before or after her arrest, such as the denial of a timely probable cause hearing or fair magistrate. Campbell also failed to respond to Defendants' motion for summary judgement on the claim. The Court, therefore, grants Defendants' motion as to the procedural due process claim.

(2) *Equal Protection*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 570 (9th Cir. 1990) (internal quotation and citation omitted). An individual may bring a cause of action under the equal protection clause for a "class of one" if the plaintiff alleges she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (Per Curiam).

In this case, Campbell makes no allegation that she was treated differently from any other similarly situated individual. Her Complaint provides Defendants and the Court with no insight into how her equal protection rights were allegedly violated, other than to make a blanket statement within a paragraph listing several other claims. Moreover, Campbell makes no attempt to respond to Defendants' motion for summary judgment on her equal protection claim. Accordingly, the Court will grant the motion on the equal protection claim.

(3) *Cruel and Unusual Punishment*

Defendants ask the Court to grant summary judgment on Campbell's cruel and unusual punishment claim. The Eighth Amendment of the United States Constitution

provides that cruel and unusual punishment shall not be inflicted.  U.S. Const. amend. VIII.  "To sustain an Eighth Amendment claim, the plaintiff must prove a denial of the minimal civilized measure of life's necessities, occurring through deliberate indifference by prison personnel or officers."  *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). The Eighth Amendment protects the interests and safety of all inmates, and restrains governmental overreaching.  *Robins v. Meecham*, 60 F.3d 1436, 1440 (9th Cir. 1995).

In this case, Campbell spent a little more than one day in jail.  However, Campbell makes no allegations about a denial of necessities or deliberate indifference by jail personnel or officers during her incarceration.  Rather, as discussed above, it is the force used during her arrest that forms the basis of Campbell's claims.  Moreover, Plaintiff failed to respond to Defendants request for summary judgment on her Eighth Amendment claim.  Accordingly, summary judgment in favor of Defendants is warranted on the claim.

### (4) *Conspiracy to Interfere with Civil Rights*

In her Complaint, Campbell asserts Count II as a conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985.  Section 1985 includes the following three subsections: (1) preventing officer from performing duties; (2) obstructing justice; intimidating party, witness, or juror; and (3) depriving persons of rights or privileges. Campbell makes no attempt to reference which subsection Defendants allegedly violated, but it seems clear from the Complaint that subsection (1) does not apply.

Section 1985(2) contains two separate causes of action concerning access to

courts: 1) where a conspiracy exists to intimidate a party, witness or juror in federal court, or to retaliate against any party or witness for participation in a case or 2) a conspiracy exists to obstruct justice in any state or territorial court, with the intent to deny equal protection of the laws. *Portman v. Santa Clara County*, 995 F.2d 898, 908-09 (9th Cir. 1993). Further, the second cause of action requires "an allegation of class-based animus for the statement of a claim." *Bretz v. Kelman*, 773 F.2d 1026,1029 (9th Cir. 1985). Campbell makes no allegations of intimidation or retaliation based on her status as a party, nor does she allege any class-based, discriminatory action. Further, Campbell failed to respond to Defendants' motion or provide any evidence supporting a claim under this section.

"The elements of a § 1985(3) claim are: (1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy and (3) a resulting injury." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1142 (9th Cir. 2000). However,"[a]n indispensable element of a claim under 42 U.S.C. § 1985(3) is some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action. . . ." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001). Again, Campbell made no such allegations in her Complaint, and failed to respond to Defendants' motion or otherwise provide evidence supporting this claim.

Accordingly, the Court will grant the motion for summary judgment on the claim.

(5)     ***Failure to Adequately Train and Supervise Officers and Negligent Hiring, Retention and Failure to Discipline or Take Necessary Corrective Action***

Campbell asserts Count IV of her Complaint as a claim for failure to adequately train and supervise police officers.  In Count V, she asserts negligent hiring, retention, and failure to discipline or take necessary corrective action.  Campbell's claims are difficult to interpret and, once again, Campbell fails to respond to Defendants' motion for summary judgment on these claims.

To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must satisfy four criteria: (1) the plaintiff possessed a constitutional right of which she was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation.  *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)..

Campbell fails to assert that the municipality had some policy or custom which was the moving force behind the officers' excessive use of force or the unlawful arrest.  Without such, Campbell's claim fails.  *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2001).  Likewise, Campbell produced no evidence that a training or supervision policy led to the force used or unlawful arrest.  Accordingly, the Court will grant summary judgment in favor of Defendants on all claims contained in Counts IV and V.

### 3. Defendants Longo and Coeur d'Alene Police Department

Campbell named Coeur d'Alene Police Chief Wayne Longo and the Coeur d'Alene Police Department as defendants in this case.

A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). There is no respondeat superior liability under § 1983. *Id.* at 1045. Although Campbell alleges constitutional violations by arresting officers, she does not claim any personal participation by Longo, or that he knew about the violations and failed to act to prevent them. The claims against Longo will be dismissed.

Defendants have also provided evidence that the Coeur d'Alene Police Department is not itself a legal entity, but is part of the City of Coeur d'Alene. (Weathers Aff., Dkt. 15-4, ¶ 3.). Accordingly, the Coeur d'Alene Police Department is considered part of the City of Coeur d'Alene and will be dismissed from this action.

### 4. Defendants' Motion to Strike

On August 30, 2010, Defendants' filed a Motion to Strike Campbell's Declaration and attached witness statements in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment. (Dkt. 19). On September 17, 2010, Defendants filed a Motion to Withdraw the Motion to Strike only as to Campbell's Declaration. (Dkt. 21).

Accordingly, the Court grants Defendants' Motion to Withdraw the Motion to

Strike as to Campbell's Declaration.

In their Motion to Strike the attached witness statements, Defendants argue that the statements are not in the form of affidavits or in any other form otherwise authorized by Rule 56 of the Federal Rules of Civil Procedure. "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Additionally, "[i]f a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. *Id.*

"[D]ocuments which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

The signed statements, written by Campbell's mother Maxine Sopher, Campbell's father Kenneth Sopher, her sister Rita Wickham, and her friend Jesse Daly, contain the authors' accounts of the evening in question and observations about Campbell's post-arrest physical and emotional problems. Campbell took copies of the statements and attached them to her declaration, which attested to the "true and correct" nature of the written statements. Campbell's declaration alone does not lay sufficient foundation for

the statements.  *See Beyene*, 854 F.2d at 1182.  The statements could not be introduced through Campbell's testimony because she does not have personal knowledge of the facts in the statement, nor did she author the statements.  *See Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002) ("documents authenticated through personal knowledge must be attached to an affidavit and the affiant must be a person through whom the exhibits could be admitted into evidence.").  Further, the written statements themselves are not admissible documents; they were not sworn or certified.  *See* Fed. R. Civ. P. 56(e)(1). Nor can the statements be authenticated in another way.  *See* Fed. R. Evid. 901(b).

Accordingly, the Defendants' Motion to Strike is granted as to the attached witness statements.

## ORDER

**IT IS ORDERED:**

1.  Defendants' Motion for Summary Judgment (Dkt. 15) is **DENIED** in part and **GRANTED** in part.  Plaintiff's excessive force claim remains.  All other claims are dismissed.

2.  Defendants' Motion to Withdraw the Motion to Strike Plaintiff's Declaration (Dkt. 21) is **GRANTED.**

3.  Defendants' Motion to Strike Witness Statements (Dkt. 19) is **GRANTED.**

DATED:  November 1, 2010



_____

**Honorable B. Lynn Winmill**

**Chief U. S. District Judge**